**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-2981 (ABJ) |
| ) | |
| U.S. DEPARTMENT ) | |
| OF ENERGY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff American Oversight is an organization "committed to promoting transparency in government" by publicly sharing information it obtains from government entities through requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Compl. [Dkt. # 1] ¶ 14.  It brought this action against the United States Department of Energy ("DOE") and Chris Wright, in his official capacity as Secretary of Energy, to challenge an agency notice that required all FOIA requesters with pending requests dated before October 1, 2024 to contact the DOE to express their continued interest in the material in order for the requests to remain open.  Compl. ¶¶ 1–10.

The complaint consists of three counts under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, claiming that defendants acted in excess of statutory authority, disregarded mandatory notice-and-comment procedures, and failed to engage in reasoned decision-making in issuing the notice.  Compl. ¶¶ 94–121.  Plaintiff seeks declaratory and injunctive relief, including an order "enjoining defendants from closing any FOIA requests based on" the notice.  Compl. at 18–19.

Pending before the Court are defendants' motion to dismiss for lack of subject matter jurisdiction, and the parties' cross-motions for summary judgment. Defs.' Mot. to Dismiss & Mot. for Summ. J. [Dkt. # 8] ("Defs.' Mot."); Pl.'s Combined Cross-Mot. & Opp. to Def.'s Mot. [Dkt. # 12] ("Pl.'s Cross-Mot."). The motions are fully briefed. *See* Defs.' Combined Opp. to Pl.'s Cross-Mot. & Reply in Supp. of Defs.' Mot. [Dkt. # 15] ("Defs.' Opp. & Reply"); Pl.'s Reply to Defs.' Opp. & Reply [Dkt. # 16] ("Pl.'s Reply"); Admin. R. [Dkt. # 7-3] ("A.R.").

For the reasons stated below, defendants' motion to dismiss and motion for summary judgment will be **DENIED**. Plaintiff's motion for summary judgment will be **GRANTED**, and the Court will issue an order setting aside the Department of Energy's notice. It will not, though, issue the injunction plaintiff requests.

## BACKGROUND

### A. Statutory Background

Congress enacted the Freedom of Information Act in 1966 to "establish[] a policy of openness toward information within the control of the Executive Branch, and a presumption that such records should be accessible . . . ." S. Rep. No. 114-4, at 1 (2015); *see* Pub. L. No. 89-554, 80 Stat. 383 (1966). The statute requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the record falls into one of FOIA's seven exceptions. *Id.* §§ 552(b)(1)–(7).

FOIA sets out the schedule governing an agency's response to a FOIA request. It requires:

> [e]ach agency, upon any request for records . . . shall . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor[.]

*Id.* § 552(a)(6)(A). The 20-day period "commence[s] on the date on which the request is first received by the appropriate component of the agency," or "not later than ten days after the request is first received by any component of the agency that is designated . . . to receive requests . . . ." *Id.* § 552(a)(6)(A)(ii).

FOIA further directs that:

The 20-day period shall not be tolled by the agency except—

(I) that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or

(II) if necessary to clarify with the requester issues regarding fee assessment.

*Id.* §§ 552(a)(6)(A)(ii)(I)–(II). The statute also provides that "[i]n unusual circumstances . . . , the time limits prescribed . . . may be extended by written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). According to the statute, "unusual circumstances" means:

(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

*Id.* § 552(a)(6)(B)(iii).

The Department of Justice's Office of Information Policy ("OIP") "is responsible for developing government-wide policy guidance on all aspects of FOIA administration." Dep't of

Just. Off. of Info. Pol'y, *About the Office of Information Policy*, https://perma.cc/T98B-JYM7. One issue OIP has addressed is the use of "still-interested" inquiries to determine whether requesters would like agencies to continue processing pending requests. *See* A.R. 1–12. In a memorandum titled "Limitations on Use of 'Still-Interested' Inquiries," it explained:

> [W]here the passage of time or a change in circumstance gives rise to a question of whether a FOIA requester is still interested in obtaining the records that are responsive to a request . . . . many agencies contact the requester to inquire whether he or she is "still-interested" in having the request processed . . . . "[W]hen done judiciously, this is entirely appropriate because agency resources should not be expended on processing a request when the requester is no longer interested in the records." In that event, rather than expending limited time and resources on a request that is no longer of interest, agency FOIA professionals can move on to processing the next requests in their processing queues, ensuring that those requests are not delayed unnecessarily.

A.R. 1–2.

OIP advised, though, that agencies should be "mindful of the manner in which such inquiries are made . . . ." A.R. 1. "While use of 'still-interested' inquiries is an understandable way to help ensure that agency resources are appropriately spent processing requests for records where the requester remains interested in receiving the documents, it is equally important that requesters are not in any way disadvantaged by their use." A.R. 4. And OIP has emphasized that "it is critical that agencies employ safeguards to limit the number and impact of [still-interested inquiries]." A.R. 2.

To that end, OIP issued recommendations for how agencies should inquire into a requester's continued interest. First, inquiries should be limited "to those situations where [the agency has] a reasonable basis to conclude that the requester's interest in the records may have changed." A.R. 2. Without "reason to believe that the requester's interest in the request has waned, [an agency] should not send a 'still-interested' inquiry." A.R. 2.

4

OIP further stated that "[w]hen an agency identifies the need to contact a requester . . . , it should do so using the requester's preferred method of communication," noting that agencies should use electronic communications as a default in the absence of a stated preference. A.R. 3. And "[w]henever feasible, the agency should make its 'still-interested' inquiry using more than one method of communication." A.R. 4. OIP explained that "it is critical that agencies remain cognizant of how such communications can be perceived by requesters and to work in a 'spirit of cooperation' when making 'still-interested' inquiries. For example, it can be helpful to explain why the agency is making the inquiry." A.R. 3. "[I]t is important for agencies to convey to requesters what will happen to the request when there is no response," A.R. 4, so the agency should "[a]dvise the requester that if they elect not to respond to the inquiry, the request will be administratively closed at the conclusion of the designated time period (which must be at least 30 working days)." A.R. 11.

If a requester responds "within a reasonable time after the deadline," OIP identified two steps agencies should take. A.R. 4. First, it "should simply re-open the request." A.R. 4–5. Second, it should "place the request back into the processing queue in the place where it would have been had the 'still-interested' inquiry not been sent." A.R. 5.

**B. Factual Background**

On August 14, 2025, the Department of Energy published a notice in the Federal Register that stated:

> Requesters who submitted a FOIA request to DOE HQ at any time prior to October 1, 2024 . . . , that is still open and is not under active litigation with DOE (or another Federal agency) shall email *StillInterestedFOIA@hq.doe.gov* to continue processing of the FOIA request. Please note that the foregoing applies to FOIA requests submitted to another agency, which were transferred to DOE and provided with a DOE control number.

5

> The email correspondence must include the specific DOE HQ FOIA control number(s) . . . and a request that DOE HQ continue processing the request(s).  All responses should be received *no later than 30 days* from the date of this notice.
>
> * * *
>
> [P]lease note that a response with the DOE HQ FOIA control number(s) is required to keep the request open.  If DOE HQ does not receive a response from requesters within the 30-day time period with a DOE control number, no further action will be taken on the open FOIA request(s), and the file may be administratively closed.

A.R. 16 (emphasis in original); *see* Notice of the Dep't of Energy Freedom of Information Act (FOIA) "Still Interested" Inquiry, 90 Fed. Reg. 39187 (Aug. 14, 2025) ("Notice").  The Notice stated that the agency also planned to "issu[e] emails to those addresses on file, referring requesters to th[e] notice."  A.R. 16.

The Notice further stated the Department of Energy undertook this action to clear the backlog of FOIA requests to the agency:

> DOE's incoming FOIA requests have tripled over the last four years, with over 4,000 requests received in FY24, and an expected 5,000 or more requests in FY25.  DOE has limited resources to process the burgeoning number of FOIA requests.  Additionally, due to the advancements in technology, DOE is being inundated with requests from vexatious requesters and automated bots. These requesters rarely respond to DOE inquiries to reformulate non-confirming requests, and contribute to processing bottlenecks.  Therefore, DOE is undertaking this endeavor as an attempt to free up government resources to better serve the American people and focus its efforts on more efficiently connecting the citizenry with the work of its government.

A.R. 16.  It also stated that the agency issued the Notice "[p]ursuant to 5 U.S.C. § 552, and in alignment with the Department of Justice's guidance on the use of 'Still Interested' letters." A.R. 16.

The same day, August 14, the Department sent plaintiff an email with the subject line "Department of Energy FOIA Requests – Federal Register Notice Requesting Your Response" to make it aware of the Notice and to ask that it "confirm" its "continued interest" in its "FOIA

6

request." A.R. 15. Plaintiff did not answer the email, and on September 3, it filed the instant

lawsuit challenging the legality of the Notice. *See* Compl. On September 12, the agency sent

plaintiff another email stating:

> We are in receipt of the attached complaint that American Oversight filed
> on September 3, 2025. Per the Still Interested Federal Register Notice, the
> Department's intention is to confirm from requesters that they want DOE to
> continue to process their requests so that resources and taxpayer funds will
> be appropriately directed to those still interested. . . . Keeping with the spirit
> of the [Notice], DOE will keep open and continue to process all American
> Oversight FOIA requests and consultations. As a courtesy, we have
> attached a listing of open FOIA requests and consultations, pre October 1,
> 2024.

A.R. 18. The attached list noted the four requests received between October 1, 2017, and October

1, 2024 that would remain open:

- Request ID: HQ-2019-00063-C, submitted by Austin Evers on February 19, 2019;

- Request ID: HQ-2022-01269-F, submitted by Loree Stark on September 8, 2022;

- Request ID: HQ-2023-00419-F, submitted by Loree Stark on January 10, 2023; and

- Request ID: HQ-2024-00079-C, submitted by Austin Evers on July 9, 2024.

A.R. 19–20.

## STANDARD OF REVIEW

### A. Motion to Dismiss

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court

must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from

those allegations in the plaintiff's favor . . . ." *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C.

Cir. 2015), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, the court need not

accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Moreover, a federal court must determine whether it has jurisdiction to hear a case before it may consider whether a plaintiff has stated a cognizable claim. *Hancock v. Urb. Outfitters*, 830 F.3d 511, 513 (D.C. Cir. 2016) ("Federal courts cannot address the merits of a case until jurisdiction – the power to decide – is established.").

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). "[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the Administrative Procedure Act, Rule 56 does not apply due to the limited role of a court in reviewing the administrative record. *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011).  Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D).  However, the scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.  A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection

9

between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations and internal quotation marks omitted).

## ANALYSIS

### I. The Court has subject matter jurisdiction over this case.

Defendants argue first that the Court lacks subject matter jurisdiction because plaintiff has not suffered a redressable injury-in-fact sufficient for standing, and because its claims are moot. Defs.' Mot. at 10–19.

Article III of the Constitution provides that federal courts may hear only "Cases" or "Controversies" within their jurisdiction. U.S. Const. art. III, § 2, cl. 1. To "give meaning" to this requirement, "courts have developed a series of principles termed 'justiciability doctrines,'" which include standing and mootness. *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). Standing considers whether the party seeking to invoke jurisdiction has alleged "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues . . . ." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Mootness concerns the alleged wrong inflicted by the defendant, and whether the circumstances surrounding that conduct have changed in such a way that the issues presented by the lawsuit are "no longer live or the parties lack a legally cognizable interest in the outcome." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (internal quotation marks omitted).

Although they "are closely related concepts, the doctrines – and relevant considerations – are distinct." *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 567–68 (D.D.C. 2018), citing *Friends of the Earth Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189–90 (2000). The question of standing is "pose[d] . . . at the time the litigation is commenced, while mootness considers whether the requisite controversy continues to exist throughout the litigation."

10

*Brookens*, 315 F. Supp. 3d at 568, citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 & n.22 (1997).

### A. Plaintiff has standing.

To demonstrate standing, the plaintiff must show: (1) that it has suffered a cognizable "injury-in-fact"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative," that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560–61 (citations omitted) (internal quotations omitted).

For injury-in-fact, the plaintiff must show that it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), quoting *Lujan*, 504 U.S. at 560. To be "concrete," the injury "must actually exist," meaning that it is "'real' and not 'abstract.'" *Id.* at 339–42 (citations omitted). And to be "particularized," the injury must affect a plaintiff "in a personal and individual way." *Id.* at 339 (citations omitted). If an injury has not yet occurred, the imminence requirement dictates "that threatened injury must be *certainly impending* to constitute injury in fact . . . ." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration in original) (internal quotations omitted).

Like individual plaintiffs, an organization can establish standing if it can "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch*, 808 F.3d at 919 (internal quotations and citation omitted). The Court of Appeals has established a two-pronged inquiry for determining whether an organization has suffered an injury in fact:  1) whether the action has "injured the [organization's] interest," and 2) "whether the organization used its resources to

11

counteract that harm."  *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (internal quotation marks and citation omitted).

Plaintiff describes the injury occasioned by the Notice as twofold:  it would either have to expend resources responding to the Notice, or risk never receiving the information it requested. *See* Pl.'s Opp. at 12–22.  Defendants argue that there is no injury-in-fact because the DOE agreed to keep plaintiff's FOIA requests open after it filed suit, they have all since been closed through the usual channels, there is no risk of future injury, and any future expense of resources would be self-imposed.  Defs.' Opp. & Reply at 4–9.

At the outset, the Court notes that defendants' arguments concerning developments that occurred after the commencement of this suit go to the question of mootness, not of standing. "[S]tanding is assessed as of the time a suit commences," *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009), and so the Court will only consider whether plaintiff would suffer an injury-in-fact when it sued.

Plaintiff satisfied the first prong of the injury in fact analysis for organizational standing. That prong requires it to show that the Notice would "impair" it's "ability to provide services," *Food & Water Watch*, 808 F.3d at 919 (citations omitted), and specifically, "that discrete programmatic concerns" would be "directly and adversely affected by the challenged action." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (internal quotation marks omitted).  American Oversight's "mission is to promote transparency in government and educate the public about government activities," and "it achieves" that mission "primarily through research and requests made under FOIA."  Decl. of Loree Stark, Ex. 1 to Pl.'s Cross-Mot. [Dkt. # 12-2] ("Stark Decl.") ¶ 2.  As part of its programmatic goal, the organization "submitted more than 150 requests directly to the U.S. Department of Energy . . . prior to October

12

1, 2024." Stark Decl. ¶ 4.  The Notice would close any of the requests that remained open if plaintiff did not abide by the agency's requirements, and that would harm American Oversight's service of making governmental information available to the public.  Indeed, the agency acknowledged that four of plaintiff's requests remained outstanding at the time this suit commenced and were therefore subject to the Notice.  *See* A.R. 20–21.

Defendants contend that closure of plaintiff's requests was speculative, requiring "guesswork as to how independent decisionmakers will exercise their judgment."  Defs.' Mot. at 13–14.  But the Notice's language was hardly speculative as to how the agency was going treat unanswered FOIA requests.  The agency warned requesters that did not contact the DOE with their specific control numbers and statements of continued interest within thirty days that "no further action will be taken on the open FOIA requests, and the file may be administratively closed."  A.R. 16.  Even if the agency had discretion over whether to administratively close the file, it was still clear that DOE would not take any more steps to fulfill the FOIA request – that was the point of the Notice.[1]

Plaintiff also satisfied the second prong for organizational injury, which considers whether it would "use[] its resources to counteract" the harm caused by defendants.  *Food & Water Watch*, 808 F.3d at 919, quoting *PETA*, 797 F.3d at 1094.  To keep its FOIA requests open, the Notice required American Oversight to identify all the requests that the agency had not responded to yet and affirm that it wanted to keep those requests open.  A.R. 16.  To carry this out, American Oversight would have to go through a number of steps within thirty days:  identify all open FOIA

---

[1]   Defendants attempt to characterize plaintiff's filing of this action as the expression of continued interest called for by the Notice.  Defs.' Mot. at 13.  This suggestion is unworkable, though, because the Notice expressly states that the DOE would not accept messages of continued interest through means other than those specified.  *See* A.R. 16 ("[The] DOE will only be accepting responses to this notice at the email address provided . . . .").

requests it submitted to DOE prior to October 1, 2024; identify all open FOIA requests submitted to another agency prior to October 1, 2024 that were then transferred to DOE; check which open requests were under active litigation or sent to DOE components not covered by the Notice; and email the DOE all of the requests and control numbers for which it was still interested. Stark Decl. ¶¶ 7–11.

As of October 1, 2024, plaintiff had submitted approximately 5,900 total FOIA requests to federal agencies and more than 150 total requests to the Department of Energy. Stark Decl. ¶¶ 3–4. The organization did "not track requests in a way that would allow it to easily identify all requests impacted by the Notice" because it did not understand the Freedom of Information Act "to contemplate circumstances in which agencies may administratively close otherwise properly submitted requests en masse." Pl.'s Opp. at 16; *see* Stark Decl. ¶ 9. So at the time it filed suit, plaintiff would have had to "divert valuable staff time and resources from other essential activities" to identify which of its requests risked closure, and notify the agency of those requests. Pl.'s Opp. at 4–5; *see* Stark Decl. ¶¶ 5, 7–14. That is a real, concrete consequence of the Notice that would tangibly affect American Oversight.[2]

Finally, plaintiff satisfied the redressability element of standing. Redressability requires the plaintiff to demonstrate that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561; *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (footnote omitted) ("Redressability examines

---

2       The Court also notes that failure to receive any nonexempt records responsive to plaintiff's requests itself would be injury. FOIA is "a statute that creates an individual right to obtain information and anyone whose request for specific information has been denied has standing to bring an action." *Nat'l Sec'y Archive v. CIA*, 104 F.4th 267, 272 (D.C. Cir. 2024) (internal quotations marks and alterations omitted). Plaintiffs need only show "that they sought and were denied specific agency records" to demonstrate an informational injury that supports standing. *See Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989).

whether the relief sought . . . will likely alleviate the particularized injury alleged by the plaintiff.").

There would be no risk of injury to the plaintiff absent the terms of the Notice – it set the requirements plaintiff had to follow to keep its FOIA requests open.  The APA authorizes the Court to set aside the Notice if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory . . . authority," or "without observance of procedure required by law."  5 U.S.C. §§ 706(2)(A), (C)–(D).  So a favorable judgment on plaintiff's counts under the APA would redress its injures by setting aside the Notice that would close plaintiff's requests.

Defendants make several other arguments challenging the redressability of plaintiff's injuries, none of which are relevant to standing because they rely on defendants' actions after plaintiff commenced the suit.  *See* Defs.' Mot. at 15–16; Defs.' Opp. & Reply at 8–9.  The Court will consider these points in its assessment of mootness.

### B.  The case is not moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (internal quotation marks omitted).  If events of the case outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.  *See Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

Defendants argue that the case is moot because "[p]laintiff already obtained . . . relief when it informed DOE through this suit that it was still interested in the continued processing of the applicable requests, and DOE informed [p]laintiff that . . . all [its] requests would remain open through final processing." Defs.' Mot. at 16.

But a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine [its] legality. . . ." *Friends of the Earth*, 528 U.S. at 189. "[W]hen 'a party voluntarily ceases the challenged activity,' the case is not moot 'unless it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Mehneh v. Rubio*, 164 F.4th 928, 931 (D.C. Cir. 2026), quoting *Pub. Citizen v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

According to the D.C. Circuit, a case is moot only if:  1) "there is no reasonable expectation that the conduct will recur"; and 2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *True the Vote, Inc. v. IRS*, 831 F.3d 551, 561 (D.C. Cir. 2016).  It is true that after plaintiff filed suit, the agency chose to recognize the "spirit" of the Notice and fulfill plaintiff's outstanding requests, which "eradicated" the Notice's effect of closing its requests.  But plaintiff challenges the lawfulness of issuing of a notice that puts the burden on the FOIA requester to keep its unanswered request open, and it is certainly reasonable to expect that the agency's conduct of issuing such notices will recur.  For one thing, defendants did not retreat from the challenged practice even in regard to plaintiff; its September 12 email just exempted plaintiff of the requirements because it filed suit.  *See* A.R. at 18 ("We are in receipt of the attached complaint that American Oversight filed . . . .  Keeping with the spirit of the [Notice],

16

DOE will keep open and continue to process all American Oversight FOIA requests and consultations."). And defendants do not begin to suggest that they will no longer issue such notices in the future. To the contrary, they tout and defend the benefits of the "still-interested" inquiry. *See* Defs.' Mot. at 14 ("If anything, DOE's still-interested communication will only benefit – not harm – Plaintiff . . . ."); Second Burns Decl. ¶ 19 ("DOE's outreach . . . has proven to be an important and effective housekeeping tool . . . ."); Third Burns Decl. ¶ 10 ("DOE's correcting of a clerical error made five years ago further exemplifies the importance of still-interested inquiries."). So it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . . ." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *see West Virginia v. EPA*, 597 U.S. 697, 720 (2022) ("[T]he Government 'nowhere suggests that if this litigation is resolved in its favor it will not' [repeat the challenged conduct]; indeed, it 'vigorously defends' the legality of such an approach. We do not dismiss a case as moot in such circumstances.") (citations omitted).

In sum, the fact that DOE voluntarily exempted plaintiff from the requirements of the Notice because of the present litigation does not mean the challenge to the Notice is moot. Nothing about those circumstances suggests that the challenged conduct would not recur, and therefore, the Court concludes that it has subject matter jurisdiction to consider the merits of plaintiff's claims.

## II.     Plaintiff has challenged a reviewable agency action.

The Administrative Procedure Act permits courts to review only "final agency action[s] for which there is no other adequate remedy," unless otherwise authorized by statute. 5 U.S.C. § 704. Defendants argue that the Notice is neither an agency action, nor a final agency action, and that plaintiff has an adequate alternative remedy through the Freedom of Information Act. Defs.' Mot. at 19–25.

17

The APA defines an "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A "rule" is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describ[e] the organization, procedure, or practice requirements of an agency . . . ." *Id.* § 551(4). The term "agency action" is well understood to be an intentionally broad, "meant to cover comprehensively every manner in which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001), but courts have also "long recognized that the term is not so all-encompassing as to authorize us to exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (alteration in original), quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948).

Defendants contend that the Notice was simply part of its "day-to-day operations" in managing FOIA requests, not a formal agency action. Defs.' Mot. at 20–21. But that is not what the Notice purports to be, or how it functions. The Department of Energy posted it in the Federal Register to notify all FOIA requesters that they had to meet certain requirements in order to receive responses to their requests. A.R. 16–17. In that way, it was a "statement of general applicability and future effect" to "implement" a policy and/or describe a procedure or practice requirement of the agency, much like a rule. That falls within the meaning of "agency action" as defined by the APA.

For an agency action to be "final," the action must: (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 620 (D.C. Cir. 2020) (alteration and internal quotations omitted),

18

quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). "An agency action is deemed final if it is definitive and has a direct and immediate . . . effect on the day-to-day business of the party challenging the agency action." *Reliable Automatic Sprinkler Co., v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

The Notice fulfills the first prong of the analysis. Under this prong, courts "consider whether the action is 'informal, or only the ruling of a subordinate official, or tentative.'" *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967). The administrative record includes the memorandum from the Acting General Counsel of the Department of Energy that describes the function of the Notice and recommends that the Secretary of Energy approve its issuance, as well as the Secretary's approval. A.R. 13. That marks the consummation of the agency's decision-making process concerning the use of the Notice, and the approval of the Secretary himself does not suggest that it was informal, tentative, or the ruling of a subordinate official.

The Notice also satisfies the second prong of the finality test. As discussed, the Notice set out a requirement that FOIA requesters would have to fulfill – the still-interested email – in order to receive records under their FOIA requests. That is an obligation that affects their legal entitlements under the Freedom of Information Act, and it would affect FOIA requesters by requiring them to take affirmative steps to keep their requests open. Therefore, the Notice constitutes a final agency action.

Finally, plaintiff does not have an adequate alternative remedy under the Freedom of Information Act. Plaintiff takes issue with the requirements of the Notice, namely, that it would have to work backwards to identify all the requests it sent to the DOE and affirm its interest to keep them open. It wants the Court to vacate the Notice so that it does not have to satisfy those

requirements.  FOIA does not provide for that type of remedy; it only authorizes plaintiff to "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant" under a particular FOIA request.  5 U.S.C. § 552(a)(4)(B).  That is not what plaintiff seeks here, and therefore, it can proceed to challenge the Notice under the Administrative Procedure Act.

**III.    The Court will grant summary judgment in favor of plaintiff on Count One because the Freedom of Information Act does not authorize defendants to issue a blanket requirement that all requesters reiterate their interest in pending requests.**

Count One alleges that defendants acted outside of their statutory authority in issuing the Notice.  Compl. ¶¶ 94–106.  The Notice states that it was issued "pursuant to 5 U.S.C. § 552," which is the FOIA statute, and defendants argue that because the FOIA does not explicitly prohibit the use of "still-interested" inquiries, it had discretion to implement the procedure.  A.R. 16; Defs.' Mot. at 26–28.

Whether an agency "has exceeded . . . its authority is a question of statutory construction . . . ."  *Helicopter Ass'n Int'l, Inc. v. Fed. Aviation Admin.*, 722 F.3d 430, 433 (D.C. Cir. 2013).  An agency cannot "act with the force of law without delegated authority from Congress."  *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 554 (D.C. Cir. 2020).  "The question . . . is not what the [agency] thinks it should do but what Congress has said it can do."  *Nat'l Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 674 (D.C. Cir. 1973) (internal quotation marks and citation omitted).  "[A]gency interpretations of statutes" are not "entitled to deference," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024), so courts apply the "traditional tools of statutory interpretation – text, structure, purpose, and legislative history," to determine statutory meaning.  *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 297 (D.C. Cir. 2003).

20

The "preeminent canon of statutory interpretation" is the assumption "that [the] legislature says in a statute what it means . . . ." *Janko v. Gates*, 741 F.3d 136, 139 (D.C. Cir. 2014), quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (alteration in original). So courts "begin with the plain text" of the statute to ascertain its meaning. *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1234 (D.C. Cir. 2026).

Nothing in the Freedom of Information Act authorizes an agency to require all requesters to take affirmative steps to reassert their interest in FOIA requests still awaiting a response, even if the request has been open and untouched for a significant amount of time. If anything, the plain text of FOIA suggests the opposite. The statute requires the agency to "make . . . records promptly available to any person" whose request "reasonably describes such records and . . . is made in accordance with published rules . . . and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). It mandates that "[e]ach agency, upon any request for records . . . , shall . . . determine within 20 days . . . after the receipt . . . whether to comply with such request and shall immediately notify the person making such request . . . ." *Id.* § 552(a)(6)(A)(i). And it sets out only three specific circumstances in which the agency may toll that deadline: if it contacts a requester for more information regarding a request, if it contacts a requester for clarification regarding fees, or under "unusual circumstances." *Id.* §§ 552(a)(6)(A)–(C). None of that indicates that the agency can tackle a backlog of requests en masse by making every requester identify and reaffirm requests it has already submitted on a very short timeframe, and unilaterally closing or ignoring requests.

FOIA does authorize agencies to promulgate certain types of regulations effecting the FOIA process, including rules: "specifying the schedule of fees applicable to the processing of requests," *id.* § 552(a)(4)(A)(i); "providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert," *id.* § 552(a)(6)(B)(iv); "providing for

multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests," *id.* § 552(a)(6)(D)(i); and "providing for expedited processing of requests for records . . . ." *Id.* § 552(a)(6)(E)(i).  But the Notice here fits into none of these categories.

Defendants argue that the Court must find the entire practice of using "still-interested" inquiries to be unlawful in order to reach the conclusion that the agency acted in excess of its statutory authority in issuing the Notice.  Defs.' Opp. & Reply at 15.  But the Notice here is a far cry from the limited, individually directed "still-interested" inquiries which the Office of Information Policy recommended could be utilized in those situations where the agency has specific grounds to believe the request has moved on.  *See* A.R. 1–12.

While efficient disclosure is a legitimate goal, *see Jordan v. U.S. Dep't of Just.*, 591 F.2d 753, 756 (1978), citing H.R. Rep. No. 93-876, at 125 (1974) (highlighting FOIA's goals of "efficient, prompt, and full disclosure of information"), defendants did not have authority under FOIA to compel all individuals and organization with requests of a certain age to manifest their continuing interest.  Therefore, the Court will grant summary judgment to plaintiff on Count One. Given that defendants did not have authority to issue the Notice, the Court need not address Count Two's claim that the issuance of the Notice was arbitrary and capricious, or the declaratory judgment related to that claim.  It also need not address Count Three's claim that the Notice should have been subjected to a period of notice and comment.

**IV.    The Court will vacate the Notice, but it will not issue an injunction.**

In addition to an order setting aside the Notice, plaintiff also seeks an order "enjoining [d]efendants from closing any FOIA requests based on the . . . Notice."  Compl. at 19.

Although the APA provides that a court must "set aside agency action" that is in excess of statutory authority, 5 U.S.C. § 706(2)(A), "[s]uccess on an APA claim does not automatically entitle the prevailing party to a permanent injunction." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020). "When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012); *Bennett v. Donovan*, 703 F.3d 582, 589 n.3 (D.C. Cir. 2013). Vacating the Notice would already effectuate what plaintiff seeks through injunctive relief – defendants cannot close any requests under the Notice if it is vacated. Therefore, the Court will not issue the requested injunction.

## CONCLUSION

For the reasons stated, the Court will **GRANT** plaintiff's motion for summary judgment and **DENY** defendants' motion to dismiss and motion for summary judgment.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 5, 2026